1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

10   IKE ELIAS,

11        Plaintiff,                          Case No. 2:11-CV-01440-KJD-CWH

12   v.                                       **ORDER**

13   RONALD H. REYNOLDS AND
     ASSOCIATES, *et al*.,
14
15        Defendants.

16

17        Presently before the Court is Defendant Unifund CCR Partners' Motion to Dismiss (#6).

18   Defendant Reynolds & Associates, LLC filed a Joinder (#10) in Unifund's Motion.  Plaintiff filed a

     response in opposition (#8/18) to which Defendants replied (#13).

19   I.  Background

20        Reading *pro se* Plaintiff's Complaint (#1) very liberally, it appears that Plaintiff brings an

21   action for RICO violations against Defendants.  Plaintiff asserts that Defendants obtained a

22   fraudulent default judgment against him in state court and then began garnishing his wages.  Plaintiff

23   then attempts to copy the allegations of a successful RICO action against a debt collector in the

24   District of New York in order to state a claim against the present defendants.

25

26

1    It appears undisputed that Discover Card attempted to collect an unpaid debt from Mr. Elias

2    in 2003 utilizing the services of the law offices of Callister & Reynolds, the predecessor of

3    Defendant Ronald Reynolds and Associates.  Plaintiff disputes the validity of that underlying debt

4    and asserts that he sought, but never received, validation of that debt.  In February 2008, Defendants

5    attempted to serve Plaintiff with the summons and complaint in a Nevada state court action based on

6    that debt.  Eventually, in the underlying state court action, Mr. Elias was served by publication, a

7    default judgment was entered against him, and his wages were subsequently garnished.  Mr. Elias

8    asserts that the affidavit of due diligence in support of the motion to effect service by publication was

9    fraudulent.  However, Plaintiff makes no specific allegations of fraudulent conduct underlying his

10   RICO claims. Instead, Plaintiff sets out the legal definition of the separate elements of a RICO claim

11   without reference to specific facts demonstrating the conduct constituting a pattern of racketeering

12   activity.

13   Finally, in response to the motion to dismiss, Plaintiff asserts that he filed a motion to set

14   aside the judgment in the underlying state court action, but that it was denied.  See Plaintiff's Reply

15   and Opposition to Defendant's Motion to Dismiss, Doc. No. 8, p.3.  Furthermore, Plaintiff's

16   opposition asserts that his case is ". . . not about whether Plaintiff can prove or Not prove of the

17   Defendants RICO violation . . .", but is about "lies to the lower court, fake Affidavit of Debt,

18   harassment and lies in collecting money[.]" Id. at p.2.  Plaintiff also asserts that "[t]he only legal

19   issues before this Court, concern the scope of ownership via debt validation request by plaintiff[.]"

20   Id.

21   II.  Standard for a Motion to Dismiss

22   In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as

23   true and construed in a light most favorable to the non-moving party."  Wyler Summit Partnership v.

24   Turner Broadcasting System, Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted).

25   Consequently, there is a strong presumption against dismissing an action for failure to state a claim.

26   See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted).

2

1    "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

2    as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937,

3    1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Plausibility, in the

4    context of a motion to dismiss, means that the plaintiff has pleaded facts which allow "the court to

5    draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

6    The Iqbal evaluation illustrates a two prong analysis.  First, the Court identifies "the

7    allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations

8    which are legal conclusions, bare assertions, or merely conclusory.  Id. at 1949-51.  Second, the

9    Court considers the factual allegations "to determine if they plausibly suggest an entitlement to

10   relief."  Id. at 1951.  If the allegations state plausible claims for relief, such claims survive the motion

11   to dismiss. Id. at 1950.

12   III.  Analysis

13   The Court agrees that Plaintiff's complaint should be dismissed.  Here, Plaintiff has taken the

14   facts as laid out in a Southern District of New York Court's opinion, Sykes v. Harris & Assoc., 757

15   F. Supp.2d 413 (S.D.N.Y. 2010), nearly verbatim, and incorporated them into his Complaint as his

16   own allegations against Defendants.  See Pls. Complaint, Doc. No. 1, p. 3-6 and Sykes, 757 F. Supp.

17   2d at 419-21.  For example, Plaintiff claims that "[i]n 2006, 2007, and 2008, they filed thousands of

18   debt collection actions in New York City Civil Court and elsewhere.  Assuming 260 business days a

19   year, they filed an average of 129 debt collection actions per day." Pls. Comp., p. 4-5.  In Sykes, the

20   Court states, "In 2006, 2007, and 2008, [defendants] filed a total of 104,341 debt collection actions

21   in New York City Civil Court.  Assuming 260 business days a year, they filed an average of 133 debt

22   collection actions per day." Sykes, 757 F. Supp.2d at 418.  Comparing these two statements, it

23   appears Plaintiff simply changed some numbers to create his allegations against Defendants.  Further,

24   Plaintiff alleges "thousands" of debt collection actions a year that amount to "129" actions per day.

25   It is unclear how Plaintiff has calculated a specific number of alleged actions per day with such a

26   generic number of alleged actions per year.  Plaintiff's Complaint goes on to say that,

3

1 "[d]efendant/defendants averred to having personal knowledge…each collection action was due and

2 owing. Assuming 260 business days a year, Defendants had to have personally…issued an average of

3 twenty affidavits of merit per hour…" Pls. Comp., p. 5-6.  Sykes stated: "[defendant] averred to

4 having personal knowledge…each collection action was due and owing.  Assuming 260 business

5 days a year, [defendant] had to have personally…issued an average of twenty affidavits of merit per

6 hour[.]" Sykes, 757 F. Supp. 2d at 420.

7        It appears that Plaintiff is assuming that all debt-buying businesses operate in the same

8 manner, and he has provided no facts specific to the alleged actions of Defendants.  These allegations

9 are "unwarranted deductions" and "unreasonable inferences" that do not deserve this Court's

10 assumptions of truth.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v.

11 Twombly, 550 U.S. 544, 570 (2007)).  Furthermore, Plaintiff has failed to meet the heightened

12 pleading standard of Rule 9(b).

13       Plaintiff claims that as a part of the alleged conspiracy "defendants engaged in mail, wire,

14 electronic, computer and cyber crime" in violation of Title 18 U.S.C. §§ 1341 – 1343, which describe

15 and prohibit fraud by mail, wire, radio or television.  See 18 U.S.C. §§ 1341 – 1343.  Therefore,

16 because Plaintiff's claim is apparently based on fraud or misrepresentation, he is subject to the

17 heightened pleading standard of Rule 9(b).

18       Rule 9(b) requires a party to state "with particularity the circumstances constituting fraud or

19 mistake."  The purpose of the heightened standard is to provide adequate notice of a defendant's

20 precise misconduct and protect a defendant's reputation.  See Kearns v. Ford Motor Co., 567 F.3d

21 1120, 1125 (9th Cir. 2009).  Specifically, "the pleader must state the time, place, and specific content

22 of the false representations." Odom v. Microsoft Corp., 486 F.3d 541, 553 (9th Cir. 2007)(quoting

23 Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1400 (9th Cir. 1986)).

24       In Odom, plaintiffs alleged that defendants, Microsoft and Best Buy, schemed to sell and

25 charge customers for services without their knowledge or consent.  In their complaint, plaintiffs

26 specifically described the transaction that resulted in the alleged fraud, but failed to identify the Best

4

1    Buy employee who conducted the transaction.  Defendants argued that because plaintiffs failed to

2    plead this identification, their pleading lacked particularity under Rule 9b.  See Id. at 554.  The court

3    disagreed, holding that the plaintiffs' exact description of the circumstances constituting fraud was

4    sufficient under the pleading standard of Rule 9b.  See Id. at 555.

5         In contrast, Mr. Elias has failed to specifically describe any transactions between himself and

6    Defendants to support his claims of alleged fraud.  It appears his fraud claim arises from the prior

7    Eighth Judicial District Court action and default judgment, but it is unclear from the Complaint.  His

8    claims are "spurious," lack the specificity necessary to place Defendants on notice of their precise

9    misconduct, and appear to be based on a completely separate scheme alleged against an entirely

10   different defendant.  See generally, Sykes, 757 F. Supp.2d 413.  Since Mr. Elias has failed to comply

11   with the pleading standard of Rule 9b, his complaint should be dismissed.

12        Finally, while the Court would generally freely grant a party leave to amend his complaint,

13   doing so in this case would be futile, because Plaintiff's amended complaint would be barred by the

14   Rooker-Feldman doctrine.  The Rooker-Feldman doctrine is based on the statutory proposition that

15   federal district courts are courts of original, not appellate jurisdiction.  See In re Sasson, 424 F.3d

16   864, 871 (9th Cir. 2005)(citing 28 U.S.C. § 1331, 1332).  Therefore, federal district courts have "no

17   authority to review the final determinations of a state court in judicial proceedings."  Worldwide

18   Church of God v. McNair, 805 F.2d 888, 890 (9th Cir. 1986).  Only the Supreme Court has original

19   jurisdiction to review the final judgments or decrees rendered by the highest state court of a state in

20   which a decision could be had.  See Sasson, 424 F.3d at 871(citing 28 U.S.C. § 1257(a)).

21        The United States Supreme Court has recently clarified the limit of the Rooker-Feldman

22   doctrine: "The Rooker-Feldman doctrine...is confined to cases of the kind from which the doctrine

23   acquired its name: cases brought by state-court losers complaining of injuries caused by state-court

24   judgments rendered before the district court proceedings commenced and inviting district court

25   review and rejection of those judgments."  Exxon Mobil Corporation v. Saudi Basic Inds. Corp., 125

26   S.Ct. 1517, 1521-22 (2005).  Therefore, three factors must exist in the present action for the Court to

1  find that it lacks subject matter jurisdiction over the claims raised by Plaintiff. First, the case must be

2  brought by a state-court loser. Second, the state-court loser must be complaining of injuries caused

3  by state-court judgments rendered before the district court proceedings commenced. Finally, the

4  complaint must invite review and rejection of the state-court judgments.

5         All three factors are satisfied in this case, and thus, this Court lacks subject matter jurisdiction

6  over Plaintiff's complaint. First, Plaintiff is a state-court loser. Plaintiff is complaining of injuries

7  caused by the state court judgments: primarily, the default judgment entered against Plaintiff and the

8  state court's denial of his motion to set aside that judgment. That determination was rendered before

9  Plaintiff's claim was filed in this action on September 7, 2011. Finally, though Plaintiff attempts to

10  artfully draft the complaint, it is clear from the pleadings that Plaintiff is inviting this Court to review

11  and reject the determinations of the state court. Plaintiff's complaint is the classic case where the

12  Rooker-Feldman doctrine declares such suits "out of bounds", and it must be dismissed for want of

13  subject-matter jurisdiction. See id. at 1521. Therefore, Defendants' motion to dismiss is granted

14  without granting Plaintiff leave to amend.

15  IV.  Conclusion

16         Accordingly, IT IS HEREBY ORDERED that Defendant Unifund CCR Partners' Motion to

17  Dismiss (#6) is **GRANTED**;

18         IT IS FURTHER ORDERED that Defendant Reynolds & Associates, LLC's Joinder (#10) in

19  Unifund's Motion is **GRANTED**;

20         IT IS FURTHER ORDERED that all other outstanding motions are **DENIED as moot**;

21         IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Defendants

22  and against Plaintiff.

23         DATED this 17th day of April 2012.

24

25                                                        _____

26                                                        Kent J. Dawson
                                                          United States District Judge